[Civ. No. 60113. Second Dist., Div. One. July 2, 1981.]

DIVISION OF LABOR STANDARDS ENFORCEMENT,
Plaintiff and Appellant, v.
MERRELL WILLIAMS et al., Defendants and Respondents.

COUNSEL

Laurence T. Emert for Plaintiff and Appellant.

Twitchell & Twitchell, Maurice Twitchell, Albert J. Tornigal and Wilson Clark for Defendants and Respondents.

OPINION

FLETCHER, J.*—This is an appeal by plaintiff from a summary judgment against its action to enjoin defendant restaurant employers from crediting meal values of employees toward the state minimum wage.

INTRODUCTION

The appellant is the State of California Division of Labor Standards Enforcement, Department of Industrial Relations (hereinafter referred to as the Division or Plaintiff). It has the authority to enforce labor laws and standards of the State of California.

Respondents are restaurants and their owners operating in the Santa Barbara area (hereinafter referred to as Defendants or Employers).

Certain categories of restaurant employees of Defendants in the past have received less than the mandatory minimum wages paid in money as set by the State of California. To the wages paid in money to the employees the employer has credited toward satisfaction of the minimum wage a sum not over the meal values permitted by the state wage order (90 cents for breakfast; $1.25 for lunch; $1.65 for dinner). Until October 18, 1976, this practice was accepted; but after that date a new wage order of the state became effective which required that there be a "voluntary written agreement" of the employees in order for the Employer to credit these meal values toward calculating whether Employers were paying minimum wages.

The union objected when the Employers solicited the employees for such written agreements, and the Employers thereupon ceased attempting to obtain said written agreements from the employees directly. However, the Employers continued to take the meal value credits toward calculating minimum wage. The union complained to the Division

*Assigned by the Chairperson of the Judicial Council.

and the Division agreed with the union and ordered the Employers to cease this practice. The Employers insisted that they already had the necessary "voluntary written agreement" of the employees obtained during collective bargaining which resulted in the Agreement as interpreted and relied on over many years of practice of the parties.

This controversy was submitted to binding arbitration, as provided for in the Agreement; the issue at the hearing, as stipulated to by the parties to the hearing, was whether there was already an effective "voluntary written agreement" as required by the order. The award of the arbitrator was in favor of the Employers that, considering the collective bargaining agreement and long standing practice of the parties, there was already such an agreement. The superior court confirmed the award.

Plaintiff brought this action for damages and an injunction against Defendants for applying the meal credits toward minimum wage calculations. The superior court granted Defendants summary judgment. Plaintiff appeals.

## FACTS

Employer and its employees are subject to the collective bargaining agreement (hereinafter referred to as Agreement) with the Culinary Alliance & Bartenders Local 703, affiliated with the Hotel & Restaurant Bartenders International Union, A.F.L.-C.I.O., hereinafter referred to as the Union.

The respondents are doing business in the Santa Barbara area as a chain of five coffee shops named Boys, Girl's & Jumbo's, hereinafter referred to as the Employer. For many years past and for all times pertinent to this lawsuit Employer has used a sum it sets as a price of the employee's meals furnished at Employer's establishments as a credit toward satisfaction of the minimum wage. The procedure of Employer is to add the meal allowances to the base credit wage and then to deduct the meal allowance from the employee's gross pay in arriving at net pay.

The part of the Agreement pertinent hereto is as follows: "All Employees working eight (8) hour shifts, before, during and after said shift, shall receive three (3) hot meals of food, two (2) of which shall be on the employee's own time. Any establishment not serving hot meals to

its employees shall pay in lieu of meals not so furnished Two Dollars ($2.00). [¶] In the event that the employee elects not to take any meal offered in accordance with this Section, the employer will not be obligated to pay any money as equivalent thereof."

The Industrial Welfare Commission of the State of California on October 18, 1976, issued Order No. 5-76 which provided rules, among other things, for crediting employees meals at establishments. Paragraph 10(B) thereof states: "(B) When meals ... are furnished by employer as part of the employee's compensation and when, pursuant to a *voluntary written agreement* between the employer and the employee, such meals ... are to be credited towards the employer's minimum wage obligation, such meals ... may not be evaluated in excess of the following:

```
"Meals:  Breakfast  ..............................$  .90
         Lunch  ...............................   1.25
         Dinner  ..............................   1.65"
```

(Italics added.)

After Order No. 5-76 became effective, the Employer began soliciting individual employees to sign written agreements that their meals may be credited toward their minimum wage. The State Department of Industrial Relations investigated this practice and disputed Employer's right to do this, claiming that the "voluntary written agreement" required by Order No. 5-76 must be through the Union and not with individual employees. Employers ceased soliciting employees for that purpose but claimed it had the right to continue to take meal credits toward minimum wage computation, because the Agreement terms quoted above are the required voluntary written agreement, and that the long time practice of the parties to so consider it is evidence of that fact.

This dispute was submitted to arbitration, in accord with the Agreement. The arbitrator interpreted the terms of the labor Agreement, considering the long standing practice of the parties as constituting the voluntary written agreement of the Union on behalf of employees to apply the meal allowance toward minimum wage. The Union petitioned the Superior Court of Santa Barbara County to vacate the award. The Employers cross-petitioned for an order confirming the award. The award was confirmed by the superior court. Plaintiff brought this action for an injunction and damages.

Defendant moved for summary judgment which was granted, and plaintiff appeals.

### CONTENTIONS OF APPELLANT:

Appellant contends that the summary judgment must be reversed, because there are several triable issues of fact not determined by the arbitrator, to wit: (1) whether there is a "voluntary written agreement" as required by Order No. 5-76; (2) whether said practice of crediting meals toward minimum wage is, as claimed by appellant, coercing or compelling employees to patronize Employer, in violation of section 450 of the Labor Code; and (3) whether taking meal credits against minimum wage is requiring a rebate to Employer of wages in violation of sections 222-224 of the Labor Code of the State of California.

DISCUSSION AND HOLDINGS OF THIS COURT:

(1) Plaintiff contends that the arbitrator failed to give proper interpretation to paragraph 10 (B) of Order No. 5-76 which requires the "voluntary written agreement" of employees before meals could be credited toward satisfying the minimum wage requirement.

The arbitrator found that the Agreement was controlling and allowed the practice of crediting the meals toward minimum wage. He specifically stated that he did not consider whether Order No. 5-76 had the effect of prohibiting the meal credits in spite of the Agreement. It was the arbitrator's view that as arbitrator he should not consider extrinsic law.

We hold that this contention does not raise an issue for the superior court.

At the hearing the parties stipulated that the arbitrator would determine the following issue: "Whether the Employees are entitled to apply a meal allowance as *contractually* required in Article VIII, Section 8 of the current collective bargaining agreement, towards the State minimum wage." (Italics added.)

The words of the arbitrator in discussing this issue were: "The arbitrator holds with respect to the meal allowance issue that the *labor agreement* permits the Employers to apply a meal allowance towards the state minimum wage based upon the long standing practice of the Employees, known to the Union, relied on by the Employers, the Em-

ployees, and the Union and which persisted over the course of several contract negotiations . . ." (Italics added.)

The specific words in the award of the arbitrator on the meal credit issue were: "1. The Employers are entitled to apply a meal allowance, as *contractually* required by Article VIII, Section 8, of the current collective bargaining agreement, towards the state minimum wage." (Italics added.)

Appellant points to a statement of the arbitrator made while he was discussing the issues: "The agreement does not contain any language which prohibits employers from taking meal credits towards meeting the minimum wage nor does it sanction it." Appellant concludes that "[i]n the absence of language in the agreement sanctioning the use of meal credit allowance, there was no holding that the parties had a voluntary written agreement, as required by Order 5-76."

We disagree. Order No. 5-76 requires a "voluntary written agreement." Whether the arbitrator found that the Agreement was a "sanction" of the meal credits is not a required finding of the arbitrator or an issue in this lawsuit. The fact is he did find that the meal credit allowance is as "contractually required" by the "labor agreement."

Did the arbitrator find that there was a "voluntary written. agreement" as required by Order No. 5-76? We hold that he did.

Until Order No. 5-76 was made the Agreement was accepted by everyone concerned as allowing the meal allowance to be applied toward the minimum wage. The order itself provides for such an application where a "voluntary written agreement" to do so exists. The arbitration proceedings, which were approved by the Agreement as a means of settling disputes, found that there was such a "voluntary written agreement" for the applying of such credits.

It is true, as appellant contends, that the arbitrator refused to consider the effect of Order No. 5-76. Appellant argues that this leaves a triable issue that the superior court should decide. In essence, appellant contends that Order No. 5-76 changed the position of the employees and the Employers in relation to the crediting of meals toward the minimum wage; that after Order No. 5-76 the meals can no longer be credited unless there is a "voluntary written agreement."

We hold, however, that this issue was decided by the arbitrator. ■ We quote with approval the words of the court in *Lehto v. Underground Constr. Co.* (1977) 69 Cal.App.3d 933, 939 [138 Cal. Rptr. 419]: "Arbitration is a voluntary procedure for settling disputes, leading to a final determination of the rights of the parties. The policy of the law is to favor arbitration, and every reasonable intendment is indulged to give effect to such proceedings. (6 Cal.Jur.3d, Arbitration and Award, § 1, pp. 6-8.) Once a valid award is made by the arbitrator, it is conclusive on matters of fact and law and all matters in the award are res judicata."

Moreover, the effect if the appellant should prevail in this case would be that the employees who take meals at the Employer's restaurants would obtain a raise in wages which is unauthorized by the Agreement. Traditionally wages are set by negotiations, but here in effect the appellant is asking the court to set them higher than the Agreement set them.

The arbitrator found that at nearly all times relevant to these proceedings the wage scale set by the Agreement has been lower than the minimum wage. The value of the meals have been used by the Employer to satisfy the minimum wage requirement. Since this has been the practice under which the parties have operated without objection for 10 years prior to October 18, 1976, when Order No. 5-76 was made by the Industrial Welfare Commission, an injunction by the superior court against the Employers taking this credit would result in a raise in pay for the employees taking meals at the establishments of the Employers. To put it another way, the employees would be getting their agreed pay plus free meals. This would be the changing of the Agreement by request of the division and court action and a side stepping of the traditional collective bargaining negotiations.

In determining whether the arbitrator had substantial evidence to decide that the Agreement constituted "voluntary written agreement" of the employees that the meal value may be credited toward minimum wage it is important to look to the reasons for Order No. 5-76 and also consider the negotiations between the Union and the Employers. The court can take as common knowledge that the orders of the State Industrial Welfare Commission and the negotiations between the labor unions and employers are for the benefit of the employees as well as the employers and the industry as a whole.

As for the benefit of the employees who wish to take their meals at the restaurants where they work, an obvious convenience in many cases, it would make no financial difference to them whether they were paid the minimum wage and then paid Employer for their meals or the Employer took care of the whole financial transaction for them on the books of the company. To enjoin the crediting of meal values toward minimum wage would accomplish nothing to the benefit of the parties most interested in the restaurant business—employees and Employers.

(2) The next question is whether the practice of crediting meals toward minimum wage is, as claimed by appellant, coercing or compelling employees to patronize Employer, in violation of section 450 of the California Labor Code.

We hold that this is not an issue in the superior court. The arbitrator decided that the employees through their Union have a voluntary written agreement with the Employer that the Employer may take these credits. Therefore, there is no issue of compulsion or coercion of employees.

(3) The final contention of appellant is that crediting meals against minimum wage violated sections 222-224 of the Labor Code.

We disagree. Section 222 states, in pertinent part, that it is unlawful "... in case of any wage agreement arrived at through collective bargaining, either wilfully or unlawfully or with intent to defraud an employee, a competitor, or any other person, to withhold from said employee any part of the wage agreed upon." Section 224 gives the qualification to 222, stating that it is not "... unlawful ... to ... divert ... an employee's wages when the employer is required or empowered to do so by state or federal law or when a deduction is expressly authorized in writing by the employee to cover ... deductions not amounting to a rebate or deduction from the standard wage arrived at by collective bargaining ...."

Appellant argues that whether Employer violated this section is an issue not ruled upon by the arbitrator. We disagree. Here again it all depends on the interpretation of the collective bargaining agreement whether, in the words of section 224, "... a deduction is expressly au-

thorized in writing by the employee." The arbitrator found that there was such an agreement.

The judgment is affirmed.

Lillie, Acting P. J., and Hanson (Thaxton), J., concurred.