[Civ. No. 47987. First Dist., Div. One. Sept. 24, 1981.]

DOROTHY PORTER et al., Plaintiffs and Appellants, v.
JAMES L. QUILLIN, as Labor Commissioner, etc., Defendant and
Respondent;
SANTA CLARA HOSPITALITY INDUSTRY, INC., Intervener and
Respondent.

COUNSEL

Philip Paul Bowe, Steven L. Stemerman and Davis, Cowell & Bowe for Plaintiffs and Appellants.

Guy T. Gurney for Defendant and Respondent.

M. Armon Cooper, Carol G. Perry, Hawkins & Cooper, Thomas A. E. Hesketh and Daryl R. Hawkins for Intervener and Respondent.

OPINION

**GRODIN, J.**—This appeal, from an order of the superior court denying a petition for writ of mandate, poses a perplexing and apparently novel question concerning the relationship between state labor standards of general application and the provisions of a collective bargaining agreement. ▮ Labor Code section 1182 empowers the Industrial Welfare Commission to establish minimum wages for all employees, and Labor Code section 450 provides that "[n]o employer, or agent or officer thereof, or other person, shall compel or coerce any employee, or applicant for employment, to patronize his employer, or any other person, in the purchase of anything of value." The two sections, read together, have been interpreted to prohibit an employer in the restaurant business from requiring employees to accept meals in the employer's establishment as part of their minimum wage, absent "specific and prior voluntary employee consent." (*California State Restaurant Assn.* v. *Whitlow* (1976) 58 Cal.App.3d 340, 348 [129 Cal.Rptr. 824].) The principal question presented here is whether a labor organization, authorized to represent all the employees in a bargaining unit pursuant to federal law, may provide that consent on a collective basis.

The question arose in the following manner. Hotel, Motel, Restaurant Employees and Bartenders Union Local 19 (the union) is the federal statutory bargaining representative for waiters and waitresses employed by members of the Santa Clara County Hospitality Industry, Inc. (hereinafter the Association). The collective bargaining agreement in effect at all relevant times provided in section 5(g) as follows: "If during the lifetime of this Agreement the California or Federal minimum wage should exceed any wage scale in existence at that time, the Employer is permitted to take meal credits up to the allowable maximums as set forth by the State and Federal laws for the difference in the two wage scales."

Effective January 1, 1979, federal and state minimum wages were increased by amounts which exceeded the then applicable wage scale for

waiters and waitresses under the collective bargaining agreement. Accordingly, the employers covered by the agreement began to take meal credits pursuant to section 5(g). This meant that certain of the employees were paid at less than the minimum rate, and were required to accept the balance of the prescribed minimum in the form of meals provided by their employers.

At the time of these events, there was in effect an order of the Industrial Welfare Commission (IWC Order No. 5-76, § 10) which limited the amount at which meals may be valued and which allowed employers to credit meals toward their minimum wage obligations to employees only "pursuant to a voluntary written agreement between the employer and the employee."

At the same time, there was in effect a written policy of the commission (Policy/Procedure Memo 76-14) which allowed employers to treat a collective bargaining agreement as constituting the "voluntary written agreement" required by IWC Order No. 5-76. Thus, so far as the commission was concerned, section 5(g) of the collective bargaining agreement was valid and enforceable.

On July 18, 1979, several waiters and waitresses covered by the collective bargaining agreement, on behalf of themselves and others similarly situated, filed in the Superior Court for the County of Santa Clara a petition for writ of mandate to compel the Labor Commissioner to require an *individual* written waiver, signed by the employee affected thereby, before permitting deduction of meal credits from the employee's wages. They alleged that at the time the agreement was ratified they were neither members of the union nor employed by any contracting employers, and never individually consented to accept meals as a credit toward the minimum wage. James L. Quillin, Labor Commissioner, Division of Labor Law Enforcement, was named as respondent, and the Association was granted leave to intervene as a respondent as well.[1] The trial court determined, in accordance with the position of the Labor Commissioner and the Association, that the collective bargaining agreement sufficed as authorization for all employees covered by the agreement, and entered judgment denying the writ. This appeal followed.

---

[1] The union is not a party to this proceeding, and there is no claim that the union violated its duty of fair representation in negotiating the agreement.

## Discussion

■ The Labor Commissioner and the Association both invoke, in support of their position, the principle of exclusive representation which is central to federal labor law. Under that principle, "Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes [are] the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment." (National Labor Relations Act, § 9(a), 29 U.S.C.A. § 159(a).) Normally, the collective agreement takes precedence over any conflicting individual contract of employment. (*J. I. Case Co.* v. *Labor Board* (1944) 321 U.S. 332 [88 L.Ed. 762, 64 S.Ct. 576].) "National labor policy has been built on the premise that by pooling their economic strength and acting through a labor organization freely chosen by the majority, the employees of an appropriate unit have the most effective means of bargaining for improvements in wages, hours, and working conditions. The policy therefore extinguishes the individual employee's power to order his own relations with his employer and creates a power vested in the chosen representative to act in the interests of all employees." (*NLRB* v. *Allis-Chalmers Mfg. Co.* (1967) 388 U.S. 175, 180 [18 L.Ed.2d 1123, 1127, 87 S.Ct. 2001].) Thus, in the absence of a violation of a union's duty of fair representation (*Steele* v. *L. & N. R. Co.* (1944) 323 U.S. 192 [89 L.Ed. 173, 65 S.Ct. 226]), a union has the authority to bind the members of the bargaining unit to the terms of a collective agreement, whether or not they are members of the union, and whether or not they were employed in the bargaining unit at the time the agreement was entered into or ratified. (*J. I. Case Co.* v. *Labor Board, supra,* 321 U.S. 332.)

Appellants, on the other hand, stress the significance of this *state's* policy, as declared in *Whitlow, supra,* 58 Cal.App.3d 340, to the effect that the consent required to validate meal credits against the minimum wage must be "specific," "voluntary" and "prior." Insisting that these requirements can only be met by individual agreements, they contend, in effect, that section 5(g) of the collective agreement is invalid, or at least unenforceable, as to them. And, citing federal precedent to the effect that a collective bargaining agreement may not waive an employee's right to receive full payment of the federally prescribed minimum

wage (*Robertson* v. *Alaska Juneau Gold Mining Co.* (9th Cir. 1946) 157 F.2d 876, cert. den., 331 U.S. 823 [91 L.Ed. 1839, 67 S.Ct. 1314], vacated on other grounds, 331 U.S. 793 [91 L.Ed. 1821, 67 S.Ct. 1728]; *Handler* v. *Thrasher* (10th Cir. 1951) 191 F.2d 120), they contend that there is no conflict between this state's policy as they interpret it and the federal principle of exclusive representation.

The federal precedents upon which appellants rely, however, involve rights under a federal statute—the Fair Labor Standards Act—which may not be effectively waived by the individual workers. (Cf. *Barrentine* v. *Arkansas-Best Freight System* (1981) 450 U.S. 728, 740 [67 L.Ed.2d 641, 653, 101 S.Ct. 1437].) The question in those cases was whether the union through collective bargaining agreement was empowered to accept a result to which the employees, acting individually, could not legally bind themselves. Here, the result agreed upon does not itself offend the policies of the Labor Code as it has been interpreted by the courts; the question is whether the union, as distinguished from the employees individually, may provide the requisite authorization.

There thus exists a tension of sorts between appellants' interpretation of the Labor Code and the union's authority under federal law, and out of that tension there arises an issue of constitutional dimension. In *Teamsters Union* v. *Oliver* (1959) 358 U.S. 283 [3 L.Ed.2d 312, 79 S.Ct. 297], the Supreme Court held that the State of Ohio could not constitutionally apply the terms of its antitrust laws to invalidate provisions of a collective bargaining agreement which were within the scope of the parties' duty to bargain under federal law: "To allow the application of the Ohio antitrust law here would wholly defeat the full realization of the congressional purpose. The application would frustrate the parties' solution of a problem which Congress has required them to negotiate in good faith toward solving, and in the solution of which it imposed no limitations relevant here. . . . We believe that there is no room in this scheme for the application here of this state policy limiting the solutions that the parties' agreement can provide to the problems of wages and working conditions. [Citation.] Since the federal law operates here, in an area where its authority is paramount, to leave the parties free, the inconsistent application of state law is necessarily outside the power of the State. [Citations.]" (358 U.S. at pp. 295-296 [3 L.Ed.2d at p. 321]; see also *Labor Board* v. *Insurance Agents* (1960) 361 U.S. 477, 488 [4 L.Ed.2d 454, 463-464, 80 S.Ct. 419]; *Machinists*

v. *Wisconsin Emp. Rel. Comm'n* (1976) 427 U.S. 132, 153 [49 L.Ed.2d 396, 411, 96 S.Ct. 2548].)

The court in *Oliver* distinguished from its holding "a case of a collective bargaining agreement in conflict with a local health or safety regulation" (358 U.S. at p. 297 [3 L.Ed.2d at p. 322]), but there is a remarkable dearth of authority as to the scope of that distinction. (Cf. *Malone* v. *White Motor Corp.* (1978) 435 U.S. 497, 513, fn. 13 [55 L.Ed.2d 443, 456, 98 S.Ct. 1185]; *State* v. *International Harvester Co.* (1954) 241 Minn. 367 [63 N.W.2d 547].)

■ We consider it unnecessary and inappropriate to reach the constitutional issue, however, since we conclude that the California Legislature did not intend by section 450 of the Labor Code to override the provisions of an otherwise lawful collective bargaining agreement authorizing an employer to allocate meals toward the statutorily determined minimum wage. A contrary interpretation would mean that employees are "coerced" or "compelled," within the meaning of section 450, by the terms of a collective bargaining agreement between their employer and their duly authorized bargaining representative, in the absence of any claim that the representative has breached its duty of representing them fairly. Such an interpretation would frustrate policies which have been expressed in this state's statutes for nearly 45 years.

Labor Code section 923 (based on Stats. 1933, ch. 566, § 1, p. 1478) declares: "Negotiation of terms and conditions of labor should result from voluntary agreement between employer and employees." The underlying premise of this policy is that, "In dealing with . . . employers, the individual unorganized worker is helpless to exercise actual liberty of contract and to protect his freedom of labor, and thereby to obtain acceptable terms and conditions of employment." (*Ibid.*) It is precisely for this reason that he must have freedom to designate "representatives of his own choosing, to negotiate the terms and conditions of his employment." (*Ibid.*) "Section 450 manifests a legislative intent to protect wage earners against employer coercion to purchase products or services from the employer." (*California State Restaurant Assn.* v. *Whitlow, supra,* 58 Cal.App.3d 340, 347.) In light of this state's declared policy, a collective bargaining agreement which is consistent with the union's obligations and authority under applicable law must be deemed adequate protection against such coercion. (See also *Division of Labor*

*Standards Enforcement* v. *Williams* (1981) 121 Cal.App.3d 302 [175 Cal.Rptr. 347].) Accordingly, the judgment is affirmed.

Elkington, Acting P. J., and Newsom, J., concurred.