[Civ. No. 25830. Third Dist. Aug. 20, 1986.]

TRACY PHILLIPS, Plaintiff and Appellant, v.
STATE PERSONNEL BOARD, Defendant and Respondent;
CALIFORNIA STATE UNIVERSITY, FRESNO,
Real Party in Interest and Respondent.

**COUNSEL**

Mocine & Eggleston and Mary H. Mocine for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, N. Eugene Hill, Assistant Attorney General, Paul H. Dobson and Faith J. Geoghegan, Deputy Attorneys General, for Defendant and Respondent and Real Party in Interest.

**OPINION**

**CARR, J.**—Plaintiff Tracy Phillips (Phillips) appeals from the trial court's denial of a writ of mandate by which he sought to compel the State Personnel Board to accept jurisdiction over the matter of *Phillips* v. *California State University at Fresno* or in the alternative require the California State University at Fresno (University) to reinstate him to his former position as a carpenter with permanent status.

He asserts his termination pursuant to an automatic resignation provision in his collective bargaining agreement[1] was invalid as he never admitted he was absent without leave, that he had in fact advised his supervisor of his need for leave for medical treatment and that under these circumstances the University could not reasonably have believed he intended to abandon his job. Moreover, that the union was not empowered to bargain away his due process rights to a pre- and posttermination hearing. The relief sought in this court is reinstatement to his position with University or a hearing before the State Personnel Board and backpay. Backpay was not sought in the trial

---

[1] This contract was reflected in a memorandum of understanding (MOU) executed by the Board of Trustees and California State Employees' and Phillips' union, the State Employees Trades Council, Local 1268, LIUNA, AFL-CIO, Unit 6, Skilled Crafts.

court and will not be considered by this court. We do conclude, however, that, for reasons stated therein, Phillips is entitled to a hearing before the State Personnel Board. We shall reverse the judgment from which this appeal is taken.

Factually, the record discloses that on August 1, 1984, pursuant to the Higher Education Employer-Employee Relations Act (HEERA, Gov. Code, §§ 3560-3599), the Board of Trustees of the California State University and the union, as the exclusive representative of the skilled crafts workers, entered into a memorandum of understanding (MOU) governing relations between the parties. Section 19.1 of the MOU contains an automatic resignation provision, which provides in relevant part as follows: "(a) An employee who is absent for five (5) consecutive workdays without securing authorized leave from the President shall be considered to have automatically resigned from CSU employment as of the last day worked. All unauthorized absences, whether voluntary or involuntary, shall apply to the five (5) consecutive workday limitation."

Section 19.1 by its express terms in section 19.1(f) of the MOU supersedes section 89541 of the Education Code, which, in the absence of the MOU would have been the controlling authority over Phillips' termination. Section 89541 provides in pertinent part: "(a) Absence without leave of an employee, whether voluntary or involuntary, for five consecutive working days is an automatic resignation from state service, as of the last date on which the employee worked.

"An employee may within 90 days of the effective date of such separation file a written request with the State Personnel Board for reinstatement. If the appointing authority has notified the employee of his automatic resignation, any request for reinstatement must be in writing and filed within 15 days of the service of notice of separation. . . . Reinstatement may be granted only if the employee makes a satisfactory explanation to the board as to the cause of his absence and his failure to obtain leave therefor, and the board finds that he is ready, able, and willing to resume the discharge of the duties of his position or, if not, that he has obtained the consent of his appointing power to a leave of absence to commence upon reinstatement."

Section 89541 further provides: "(b) If the provisions of this section are in conflict with the provisions of a memorandum of understanding reached pursuant to Chapter 12 (commencing with Section 3560) of Division 4 of Title 1 of the Government Code, the memorandum of understanding shall be controlling without further legislative action, . . ."

Phillips was a full-time, permanent employee of University. On July 27, 1984, Phillips returned from a seven-week leave of absence because of

illness. On August 7, 1984, Phillips telephoned his supervisor and told him that he was going to a clinic and was going to try to get a leave of absence from work. According to Phillips, on or about August 8, he informed his supervisor of his leave request and illness and of the time off work he would need. He then asked the supervisor about the procedure to follow in order to take a leave of absence. He was told to contact the University personnel office. Phillips went to the University personnel office a day or two later and was instructed to submit a request for a leave of absence in writing. He was told nothing about a time limit within which to apply for a leave of absence and he did not inquire about a time limit.

Phillips was then absent from work for five consecutive days from August 8, 1984. On August 14, the University regarded Phillips as having automatically resigned because he had been absent without authorized leave for five consecutive days. By letter dated August 15, 1984, the University notified Phillips that his absence constituted an automatic resignation from University employment.

On August 20, 1985, Phillips submitted a written request for a leave of absence and filed a request for reinstatement with the president of the University, pursuant to the provisions of his union contract. The president denied Phillips' request for reinstatement.

Phillips next appealed to the State Personnel Board alleging that he had been dismissed. The State Personnel Board dismissed the appeal without hearing on the ground that it raised no issue within the jurisdiction of the board. Phillips sought reconsideration by the State Personnel Board, which was also denied.

Phillips then filed his petition for writ of mandate. The only relief sought was to compel respondent State Personnel Board to grant him a hearing or to order real party in interest, University, to reinstate him. The trial court concluded that the contract provisions by which Phillips was deemed to have automatically resigned from University employment controlled and that the provisions of the MOU were not repugnant to the state or federal Constitutions. It denied the writ and this appeal followed.

DISCUSSION

We initially consider what right Phillips has in his employment by reason of his status as a permanent public employee. ■ A public employee, by virtue of this employment, holds a recognized property interest in such continued employment. (*Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194, 204 [124 Cal.Rptr. 14, 539 P.2d 774].) Accordingly, due process

protects that right and a public entity employer cannot discharge a permanent employee without complying with procedural due process requirements. (*Id.*, at p. 207.)

In *Skelly* v. *State Personnel Board, supra,* 15 Cal.3d 194, the California Supreme Court considered whether a state agency could, consistent with the due process guarantees of the Fifth and Fourteenth Amendments to the United States Constitution and article I, sections 7 and 15 of the California Constitution, take punitive action against an employee without affording the employee any prior procedural rights. ■ The court concluded that the taking of punitive action against an employee without affording the employee any prior procedural rights violates the due process guarantees. (*Id.*, at p. 215.) Due process, the court stated, does not require the state to provide the employee with a full trial-type evidentiary hearing prior to the initial taking of punitive action. (*Ibid.*) Due process does mandate that the employee be accorded certain procedural rights before the discipline becomes effective; these preremoval safeguards must include notice of the proposed action, the reasons therefor, a copy of the charges and materials upon which the action is based, and the right to respond, either orally or in writing, to the authority initially imposing discipline. (*Ibid.*)

Recently, the United States Supreme Court in *Cleveland Bd. of Educ.* v. *Loudermill* (1985) 470 U.S. 532 [84 L.Ed.2d 494, 105 S.Ct. 1487] reached a similar conclusion, holding that the due process clause of the United States Constitution requires that a government employee who has a significant property interest in his employment must be given an opportunity for a hearing before he is discharged. (*Id.*, at p. 545 [84 L.Ed.2d 494 at p. 506].) The pre-termination hearing need not definitively resolve the propriety of the discharge; it must, however, give the tenured public employee oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. (*Ibid.*)

Moreover, an employee is entitled to a post-termination hearing if a full hearing was not afforded him prior to termination. (*Id., supra,* 470 U.S. 532 [84 L.Ed.2d 494].) At minimum this right includes the right to appear personally before an impartial decisionmaker, to confront and examine adverse witnesses, to present favorable evidence, and to be represented by counsel. (*Los Angeles County Employees' Assn.* v. *Sanitation Dist. No. 2* (1979) 89 Cal.App.3d 294, 299 [152 Cal.Rptr. 415].)

■ At issue herein is not a discharge in the usual sense but a termination of employment after five consecutive days absence from work without leave by what is somewhat euphemistically called "automatic resignation." In upholding the termination of a state employee pursuant to almost identical

language contained in an automatic resignation section of the Government Code (§ 19503, now codified as § 19996.2) this court, in *Willson* v. *State Personnel Bd.* (1980) 113 Cal.App.3d 312 [169 Cal.Rptr. 823], characterized the automatic resignation as a severance of the employment relationship by the employee's own act and not by the State's action. The termination was therefore not a "deprivation" or "taking" of a property right for due process purposes (*id.,* at p. 315) and was upheld. (See also *Armistead* v. *State Personnel Bd.* (1981) 124 Cal.App.3d 61 [177 Cal.Rptr. 7].)

Underlying the automatic resignation statutory provisions is the concept that one may abandon a property right, such as the continued right to employment by a public entity, and, if one does, one may not thereafter complain he was deprived of a property right without due process.

In *Goggin* v. *State Personnel Bd.* (1984) 156 Cal.App.3d 96 [202 Cal.Rptr. 587], the court upheld the automatic resignation of a state employee who did not return to work after his leave expired. (*Id.,* at pp. 106-107.) He had gone on sick leave on June 23, 1979. He failed to substantiate his continued illness and after many unsuccessful attempts to contact him during the months of July and August, he was notified by his employer of his separation on September 7, 1979. (*Id.,* at p. 101.) His termination was upheld based on an abandonment of his position.

In *Willson* v. *State Personnel Bd., supra,* the critical factor was the admission by the state employee that he was absent without leave. Painting with an unnecessarily broad brush, this court observed that "in the nature of such matters, conduct giving rise to automatic resignation is rarely, if ever, susceptible to factual dispute." (*Id.,* at p. 317.) In subsequent cases treating automatic resignation situations, the factual situation has rarely been admitted.

In *Zike* v. *State Personnel Bd.* (1983) 145 Cal.App.3d 817 [193 Cal.Rptr. 766], on which great reliance is placed by Phillips, the terminated employee, Zike, advised his employer he would be late returning from his vacation. He had engaged in this same practice on previous occasions and had not been reprimanded or disciplined. He did not intend to resign his position and his employer had no reason to believe he was resigning. The court concluded the automatic resignation provisions of Government Code section 19503 were unconstitutional as applied to Zike because they violated his rights to procedural due process. Government Code section 19503, the court stated, must be strictly confined to those situations where the absence without leave is admitted (*Willson* v. *State Personnel Bd., supra,* 113 Cal.App.3d 312) or to those situations where the employer reasonably believes an aban-

donment has occurred. (*Goggin* v. *State Personnel Bd., supra,* 156 Cal.App.3d 96.)

Moreover, the burden of proof is upon the employer to show the absence was unauthorized or that the employer reasonably believed an abandonment had occurred. (*Curia* v. *Civil Service Com.* (1981) 126 Cal.App.3d 994, 1008-1009 [179 Cal.Rptr. 476].)

In this case, Phillips does not admit he was absent without leave. He had informed his supervisor of his illness, of his leave request and of the required time off from work. He then contacted the personnel office to ascertain the procedure to secure a leave of absence. Phillips was told nothing about a time limit within which to apply for a leave. He submitted a written request for a leave of absence some 13 days after informing his supervisor of his intended absence. In addition, the trial court found that Phillips had previously obtained a seven-week leave of absence following the same procedure. There were no facts present which could lead the employer to reasonably conclude that Phillips had abandoned his job. Phillips' supervisor had been informed of his illness and of his request for a leave of absence. Under these circumstances, it appears that failure to provide Phillips, at a minimum, with pretermination notice of the intent to terminate, a statement of reasons therefor and some opportunity to respond, either orally or in writing, together with a full posttermination hearing, constituted a violation of procedural due process and resulted in the deprivation of a fundamental property right. (*Cleveland Bd. of Educ.* v. *Loudermill, supra,* 470 U.S. 532 [84 L.Ed.2d 494].)

The board asserts that because the automatic resignation provision is contained in a collective bargaining agreement, a different situation is presented which distinguishes this case from the cases involving automatic resignation statutes. The parties to the MOU bargained for a particular kind of procedure and the procedure bargained for satisfies the requirement of procedural fairness. Phillips asserts that he has been unconstitutionally deprived of his rights to both pre- and posttermination hearings, rights his union may not waive. In considering the provisions of the MOU and whether they provide for procedural fairness, we are guided by the rule that due process does not entitle a person to a hearing before any particular tribunal. (*State of Cal.* ex rel. *Dept. of Water Resources* v. *Natomas Co.* (1966) 239 Cal.App.2d 547, 558 [49 Cal.Rptr. 64].) ■ Moreover, parties to a collective bargaining agreement may supplant statutory procedures and remedies whereby covered public employees may challenge disciplinary action taken against them and may substitute alternate methods therefor. (*Plummer* v. *Klepak* (1978) 63 App.Div.2d 983 [405 N.Y.S.2d 767; *Burnley* v. *Thompson* (5th Cir. 1975) 524 F.2d 1233.)

Section 19.1 of the MOU supplanted Education Code section 89541, which is an automatic resignation provision applicable to personnel of the California State University.[2] Pursuant to Education Code section 89541, the separated employee may file a request for reinstatement with the State Personnel Board. That request results in a full hearing before the State Personnel Board. (See *Goggin* v. *State Personnel Bd., supra,* 156 Cal.App.3d 96; *Zike* v. *State Personnel Bd., supra,* 145 Cal.App.3d 817; *Willson* v. *State Personnel Bd., supra,* 113 Cal.App.3d 312.)

Under section 19.1 of the MOU the terminated employee may request the President of the University to reinstate him if he applies to the president in writing within 10 days after notice of the automatic resignation is mailed. No hearing is required to be held. The president considers the request and his determination is final.

Initially, we observe that section 19.1 provides for no pretermination notice or hearing. Nor does the section give an employee against whom the automatic resignation provisions are invoked any of the posttermination rights we previously identified as minimally due a discharged employee: the right to appear personally before an impartial decisionmaker, to confront and examine adverse witnesses, and to present favorable evidence. (*Cleveland Bd. of Educ.* v. *Loudermill, supra,* 470 U.S. 532 [84 L.Ed.2d 494].) The procedure contemplated by section 19.1 is no hearing at all for the terminated employee who disputes he was absent without leave. It does not just substitute a particular kind of procedure for the one supplanted; it constitutes a waiver of the employees' rights to due process.

The issue evolves into whether the union may waive the due process rights of its members. ▪ On the one hand, it is a basic principle of a collective bargaining system, such as HEERA, that a member of a bargaining unit is bound by the terms of a valid collective bargaining agreement, though he is not formally a party to it and may not even belong to the union which negotiated it. (*San Lorenzo Education Assn.* v. *Wilson* (1982) 32 Cal.3d 841, 846 [187 Cal.Rptr. 432, 654 P.2d 202].) The courts will relax this rule only when the enforcement of a collective bargaining provision would contravene an extraordinarily strong and explicit state policy. (*Ibid.*) Thus, members of the bargaining unit have been held bound by a provision in a collective bargaining agreement which conflicted with a provision of the

---

[2]Subdivision (b) of Education Code section 89541 provides that if the provisions of the section are in conflict with the provisions of a memorandum of understanding, the memorandum of understanding controls. Subdivision (f) of section 19.1 of the MOU provides, "Provisions 19.1 a-e of Article 19, Leave of Absence Without Pay, shall supersede Section 89541 of the California Education Code."

Labor Code. (*Porter* v. *Quillin* (1981) 123 Cal.App.3d 869, 876 [177 Cal.Rptr. 45].)

On the other hand, collective bargaining agreements may not contain provisions abrogating employees' fundamental constitutional rights (*Woodruff* v. *Bd. of Tru. of Cabell Huntington* (W.Va. 1984) 319 S.E.2d 372; *Marcello* v. *Long Island R. R.* (S.D.N.Y. 1979) 465 F.Supp. 54, 59, fn. 6) or their rights under a federal statute. (*Barrentine* v. *Arkansas-Best Freight System*, (1981) 450 U.S. 728, 740 [67 L.Ed.2d 641, 653 [101 S.Ct. 1437];]; *Alexander* v. *Gardner-Denver Co.* (1974) 415 U.S. 36, 51 [39 L.Ed.2d 147, 160 [94 S.Ct. 1101]].)

In *Alexander* v. *Gardner-Denver Co., supra,* 415 U.S. 36, the Supreme Court acknowledged that a union may waive certain statutory rights related to the collective activity, such as the right to strike, because such rights are conferred on employees collectively to foster the processes of bargaining. The right properly may be exercised or relinquished by the union as a collective-bargaining agent to obtain economic benefits for union members. An individual's right to equal employment opportunities, the court explained, stands on plainly different grounds; it concerns not majoritarian processes, but an individual's absolute right to be free from discriminatory practices. Therefore, the court concluded, an employee's rights in this regard cannot be prospectively waived by a collective bargaining agreement. (*Id.* at pp. 51-52.)

We conclude that though the parties to a collective bargaining agreement may supplant existing procedures by which employees are disciplined or discharged, an employee's right to due process cannot be waived in a collective bargaining agreement. The procedures adopted in the agreement must comport with the requirements of due process. At a minimum, prior to termination, the employee must be provided with notice of the intent to terminate, a statement of the reasons therefor and with some opportunity to respond either orally or in writing followed by a full post-termination hearing.

Phillips has been unconstitutionally deprived of his employment with the University without due process by operation of the provisions of section 19.1 of the MOU. Since we conclude that the provisions of section 19.1 of the MOU are unconstitutional, Phillips is entitled to a hearing before the State Personnel Board as provided for by Education Code section 89541.

As to back salary, Phillips did not seek this relief in the trial court. More importantly, section 89541 of the Education Code expressly provides an

employee who is reinstated after hearing "shall not be paid salary for the period of his absence or separation or for any portion thereof."

DISPOSITION

The judgment is reversed and the cause is remanded to the trial court with directions to issue the writ of mandate compelling the State Personnel Board to accept jurisdiction over the matter of *Phillips* v. *California State University at Fresno*.

Evans, Acting P. J., and Blease, J., concurred.

A petition for a rehearing was denied September 17, 1986, and the petitions of all parties for review by the Supreme Court were denied December 11, 1986.