[Civ. No. 67518. Second Dist., Div. Three. Apr. 20, 1984.]

DAVID H. GOGGIN, Plaintiff and Appellant, v.
STATE PERSONNEL BOARD, Defendant and Respondent.

COUNSEL

McMaster & Lobel and Loren E. McMaster for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, N. Eugene Hill, Assistant Attorney General, and David W. Halpin, Deputy Attorney General, for Defendant and Respondent.

OPINION

KLEIN, P. J.—Plaintiff and appellant David H. Goggin (Goggin) appeals from a judgment denying a petition for a writ of mandate to set aside a decision of the defendant and respondent California State Personnel Board (Board).

Because the Board did not abuse its discretion in finding Goggin was AWOL and had abandoned his job, the trial court's denial of the writ is affirmed.

PROCEDURAL AND FACTUAL BACKGROUND

In June 1979, Goggin was employed as a youth counselor with the Department of the Youth Authority (Youth Authority) at the Nelles School in Whittier. Goggin went on sick leave on June 23, 1979. After many unsuccessful attempts to contact Goggin during the months of July and August, the Youth Authority concluded that a statutory resignation had occurred pursuant to Government Code section 19503 (section 19503).[1]

The section provided in 1979: "(a) Absence without leave, whether voluntary or involuntary, for five consecutive working days is an automatic resignation from state service, as of the last date on which the employee worked. [¶] A permanent or probationary employee may within 90 days of the effective date of such separation, file a written request with the board for reinstatement; provided, that if the appointing power has notified the employee of his automatic resignation, any request for reinstatement must be made in writing and filed within 15 days of the service of notice of separation. Service of notice shall be made as provided in Section 18575 and is complete on mailing. Reinstatement may be granted only if the employee makes a satisfactory explanation to the board as to the cause of his absence and his failure to obtain leave therefor, and the board finds that he is ready, able, and willing to resume the discharge of the duties of his position or, if not, that he has obtained the consent of his appointing power to a leave of absence to commence upon reinstatement. [¶] An employee so reinstated shall not be paid salary for the period of his absence or separation or for any portion thereof."

On or about September 7, 1979, a letter was sent to Goggin which was forwarded to him in Susanville, California, where he had been working as a youth counselor since July 1, 1979. This letter advised Goggin that he was being separated from his position for being absent without leave (AWOL) for five working days between August 20 and August 26, 1979, and also advised him of his appeal rights.

On April 27 and 28, 1980, Goggin had a full-blown administrative hearing, with witnesses, including Goggin, giving testimony. At the conclusion of the hearing, the Board issued findings of fact and conclusions of law, holding that Goggin's termination pursuant to section 19503 was proper, that he had not presented a satisfactory explanation of his absence and that he was not ready and willing to return to work. A petition for rehearing was denied on December 18, 1980.

---

[1]Government Code section 19503 is now section 19996.2, subdivision (a), but will be referred to by its former section number in this opinion.

On March 16, 1981, Goggin filed a petition for a peremptory writ of mandate pursuant to Code of Civil Procedure section 1094.5 (section 1094.5) seeking review of the Board's decision. Papers were filed on both sides and on November 10, 1981, the matter was heard and argued in the Los Angeles Superior Court. On December 1, 1981, the trial court denied the petition for a peremptory writ of mandate, ruling that the findings of the Board were "supported by substantial evidence in light of the whole record." On January 29, 1982, the trial court entered its judgment, and Goggin filed the instant appeal.

## CONTENTIONS

Goggin contends that he was improperly terminated in violation of the state's prescribed policies; his right to procedural due process was violated by his automatic resignation under section 19503; his rights to substantive due process and equal protection were also violated by that section; his automatic resignation under section 19503 resulted from improper motivation of the Youth Authority, and that upon reinstatement he is entitled to backpay.

## DISCUSSION

### 1. *Scope of appellate review.*

■ It is firmly established that when review of an agency deriving its adjudicative powers from the California Constitution is sought under section 1094.5, the trial court's scrutiny of the agency's factual findings is limited to a determination whether those findings are supported by the whole record, regardless of whether the agency's decision involves a fundamental vested right. (*Washington* v. *State Personnel Bd.* (1981) 127 Cal.App.3d 636, 639 [179 Cal.Rptr. 637].) ■ The factual determinations of an agency of constitutional origins are entitled to the deference and respect due a judicial decision, (*ibid.*) and these determinations are not subject to reexamination but are reviewed only under the substantial evidence test. (*Stanton* v. *State Personnel Bd.* (1980) 105 Cal.App.3d 729, 735 [164 Cal.Rptr. 557].)

■ Substantial evidence is defined as: " 'relevant evidence that a reasonable mind might accept as adequate to support a conclusion, . . .' " *Hosford* v. *State Personnel Bd.* (1977) 74 Cal.App.3d 302, 307 [141 Cal.Rptr. 354], or " ' "ponderable legal significance . . . reasonable in nature, credible, and of solid value." ' " (*Ofsevit* v. *Trustees of Cal. State University & Colleges* (1978) 21 Cal.3d 763, 773, fn. 9 [148 Cal.Rptr. 1, 582 P.2d 88].)

■ On appeal, this court exercises the same function as the trial court and must decide if the agency's findings were based on substantial evidence. Neither court may reweigh the evidence, and both courts must view the evidence in the light most favorable to the Board's findings and indulge in all reasonable inferences in support thereof. (*Maynard* v. *State Personnel Bd.* (1977) 67 Cal.App.3d 233, 237 [136 Cal.Rptr. 503].)

■ Although as a public employee, Goggin's right to continued permanent employment is undoubtedly a fundamental right (*Pipkin* v. *Board of Supervisors* (1978) 82 Cal.App.3d 652, 661 [147 Cal.Rptr. 502]), because the Board is a statewide administrative agency which derives its adjudicatory power from the California Constitution, its factual determinations are reviewed under the substantial evidence test regardless of the right or interest affected. (*Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194, 217, fn. 31 [124 Cal.Rptr. 14, 539 P.2d 774].) It is under this standard that we review the instant appeal.

2. *Goggin was not improperly terminated in violation of the state's Personnel Transaction Manual (PTM).*

■ Goggin contends that the guidelines for AWOL determinations as set out in section 530 of the PTM were not followed. We find no merit in this contention.

The Board as author of the PTM was aware of its provisions and considered them in the sustaining of the automatic resignation.

As the hearing officer concluded: "Appellant [Goggin] also contends that his termination for AWOL was violative of Personnel Transactions Manual Section 530.2(d), which requires a supervisor who has initially granted sick leave to make it clear to the employee that the employee will be considered AWOL unless substantiation of his illness is provided. [¶] In this case, appellant's supervisor approved appellant's sick leave from June 20, 1979. On August 1, 1979, when the supervisor [Rios] requested a medical prognosis and return to work date, which appellant agreed to provide, the requirements of Section 530.2(d) were fulfilled. When appellant failed to furnish the information, within a reasonable time, it was appropriate that the authorization for leave be withdrawn, which occurred when appellant had exhausted all of his earned leave on August 19, 1979."

We have no difficulty in concurring with the hearing officer's conclusion that it was up to Goggin to continue to bring in substantiation of his illness after August 1, 1979. At that time, Goggin brought in properly filled out sick leave forms for June and July.

During that visit, when Rios, Goggin's supervisor, asked him for a diagnosis and a return date, Goggin replied the doctor considered him "an obsessive compulsive individual" and that it was the doctor's decision when he could return. Knowing his illness was of indefinite duration Goggin should have inquired about the expiration of his sick leave and the possibility of a leave of absence as well as informing his supervisor where he could be reached. Instead, he was silent on all counts.

We find no violation of PTM.

3. *Goggin's right to procedural due process was not violated by his removal under section 19503.*

■ Goggin contends his severance from his public employment under section 19503 violated his right to procedural due process as mandated in *Skelly.*

■ Granted that state employment is a valuable property right that must be accorded certain procedural due process protections. (*Skelly* v. *State Personnel Bd., supra,* 15 Cal.3d at pp. 207-216.) Yet, the government employer has a legitimate interest in the expeditious removal of the employee who is unsatisfactory. (*Id.,* at p. 213.)

■ Section 19503 is triggered, and constructive resignation occurs, when a state employee is absent without leave whether voluntary or involuntary for more than five consecutive working days. (*Willson* v. *State Personnel Bd.* (1980) 113 Cal.App.3d 312, 315 [169 Cal.Rptr. 823], app. dism. (1981) 454 U.S. 806 [70 L.Ed.2d 75, 102 S.Ct. 79].) Because it is the employee's *own act,* not that of the state, which severed the employment, there is no governmental action which amounts to a deprivation of property without procedural due process. (*Ibid.*)

Hence, the court in *Willson* concluded "that even if plaintiff's constructive resignation constituted governmental action for due process purposes, procedural fairness was not affronted by the lack of safeguards prior to plaintiff's resignation. Balancing the private and governmental interests involved [citations], we are satisfied the preremoval safeguards enumerated in *Skelly* would have little, if any, value in the present context. Though the property interest at stake is substantial, we have already noted that section 19503 gives fair notice of exactly when, why and how an employee constructively resigns his position; . . ." (*Id.,* at p. 317.)

■ In a recent case subsequent to *Willson,* the court, realizing the harshness of section 19503 because it allows automatic resignation without

a hearing, held that the section should be strictly confined to situations where the employee admits his absence without leave (as was the case in *Willson*), *or* those situations where the employer reasonably believes an abandonment of the position has occurred. (*Zike* v. *State Personnel Bd.* (1983) 145 Cal.App.3d 817, 823-824 [193 Cal.Rptr. 766].)

In *Willson,* the employee did not dispute that he engaged in the conduct causing his resignation and hence admitted his absence without leave. (*Willson* v. *State Personnel Bd., supra,* 113 Cal.App.3d at pp. 314, 317.) In *Zike,* there was a factual dispute as to whether Zike's employers, the school authorities, by their handling of his request for honeymoon leave and by their acquiescence to his previous late arrivals after leave in school years 1975, 1977, 1978, had in fact authorized his absence in September of 1979. (*Zike* v. *State Personnel Bd., supra,* 145 Cal.App.3d at p. 823.) Because of this factual dispute, the *Zike* court reversed, as the school authorities had no reason to believe that Zike was voluntarily resigning because he informed them of his intention to return to school late after his honeymoon. (*Ibid.*)

 Applying these standards to the instant case, there was a factual dispute as Goggin did not admit he was absent without leave. Hence, the issue here was whether Goggin's employers could have reasonably believed he had abandoned his job. We think so.

Unlike the situation in *Zike,* where the school authorities knew Zike was returning, here it was reasonable for the Youth Authority to believe Goggin had abandoned his position because his every action indicated as much.

After mid-July 1979, Goggin did not keep in touch with his employer. He "popped up" one time on August 1, 1979, to get his sick leave approved for June and July. At that time, as discussed *ante,* Goggin met with his supervisor and informed him he would be out for an indefinite period of time. By this time, Goggin must have been aware that his sick leave would *eventually* run out, but instead of inquiring about obtaining a leave of absence, Goggin made no inquiries. We agree with the hearing officer that "[a]ppellant's [Goggin's] prior union activities indicate he was well aware of departmental policy or, if he were sincerely, interested in retaining his job, had the sophistication to discover the correct procedure for obtaining authorized leave."

Furthermore, as far as the Youth Authority was concerned, Goggin could not be located in August. Goggin argues that Rios never asked for a new address on the August 1 visit. The address Goggin had on file with the Youth Authority was in La Mirada. All correspondence from the Youth

Authority to Goggin at that address came back undelivered. In fact, Goggin had not lived in La Mirada for several years, and was instead living in Norwalk up to July 1979. Goggin admitted to having that phone disconnected.

Goggin had left Southern California and had taken a job in Northern California starting in July, 1979. The Youth Authority never had his Norwalk address until a request from an insurance company came for verification of Goggin's sickness. On September 6, 1979, the personnel officer noted an address for Goggin on that form different than the La Mirada one. A letter notifying Goggin of his automatic resignation under section 19503 was then sent to the Norwalk address on September 7, 1979, and was delivered to Goggin in Susanville, California, on or shortly after September 13, 1979. Goggin never did inform the Youth Authority of his address or whereabouts in July, August or September 1979. Goggin moved not once but twice without notifying the Youth Authority, thereby thwarting their good faith effort to place him on nonindustrial disability.

Even after being notified of his automatic resignation, Goggin did nothing immediately. Section 19503 required that once an employee has been notified of his/her automatic resignation "any request for reinstatement must be made in writing and filed within 15 days of the service of the notice of separation," and service is complete on mailing. Here, the letter was forwarded and delivered on or about September 13, 1979, but Goggin continued to work in Susanville and did not contact the Youth Authority until October 1, 1979, and then only to turn in a sick leave form for August 1979. If Goggin wanted to be reinstated, he said nothing at the time.

Besides being out of contact with the agency while working in Northern California, his doctor could not reach him either. Based on all the above, we find it more than reasonable that the Youth Authority believed Goggin had abandoned his job. As the court in *Willson* v. *State Personnel Bd.,* *supra,* 113 Cal.App.3d at page 317, aptly stated: "Furthermore a substantial economic burden would be cast upon the state, and its ability to function would be seriously impaired if its employees could absent themselves without leave for long periods of time and the state were required to give them notice and opportunity to respond before being able to fill vacant positions." Therefore, we find no violation of Goggin's procedural due process by the automatic resignation under section 19503.

4. *Goggin's substantive due process and equal protection rights were not violated by his removal under section 19503.*

Goggin also contends that his substantive due process and his equal protection rights were violated. This contention is without merit.

Although the plaintiff in *Zike* v. *State Personnel Bd., supra,* 145 Cal.App.3d at page 822, challenged the constitutionality of section 19503 under substantive due process and equal protection as well as procedural due process, in that case as well as *Willson,* the court's decisions were based on *procedural* due process grounds. (*Zike* v. *State Personnel Bd., supra,* 45 Cal.App.3d at pp. 822-823; *Willson* v. *State Personnel Bd., supra,* 113 Cal.App.3d at p. 317.) Therefore, these cases do not provide precedent on this issue.

Goggin does not request that we apply the strict scrutiny standard of review to public employment, but rather argues that section 19503 is unconstitutional because it violates the rational basis for violation of equal protection and substantive due process. For equal protection, the rational basis test says there is a presumption of constitutionality "requir[ing] merely . . . that . . . distinctions drawn by a challenged statute bear some rational relationship to a conceivable legitimate state purpose." (*Gray* v. *Whitmore* (1971) 17 Cal.App.3d 1, 22 [94 Cal.Rptr. 904].) For substantive due process, the rational basis test is "the law must not be unreasonable, arbitrary, or capricious but must have a real and substantial relation to the object sought to be obtained." (*Id.,* at p. 21.)

 Section 19503 is constitutional under these tests for the same reason, as discussed *ante,* that it passed procedural due process muster. That is, section 19503 bears a rational relationship to the legitimate and important state function of filling government positions of employees absent without leave.

Therefore, Goggin's substantive due process and equal protection rights were not violated.

*5. The notification of automatic termination was not a punitive action but was motivated by justifiable considerations.*

 Goggin contends that his automatic dismissal was reprisal for activities in his union and his grievance and complaint activity. This contention also is without merit. As the hearing officer's findings stated: "This contention is not established by the evidence. There is no evidence that appellant [Goggin] would have been denied a medical leave *if he had requested it.* On the contrary, the department was lenient in authorizing appellant's leave after the fact and during periods when his supervisor did not know where he was." (Italics added.)

What is significant is that Goggin never requested a leave of absence nor has he ever contended that he did. The Board's decision as to this issue was proper.

6. *Goggin is neither entitled to reinstatement nor to backpay.*

 Because Goggin's automatic resignation under section 19503 was proper, he is entitled neither to reinstatement, nor to back pay.

## DISPOSITION

The judgment is affirmed.

Lui, J., and Danielson, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 18, 1984.