[No. A026985. First Dist., Div. Four. Sept. 11, 1986.]

PRISON LAW OFFICE, Plaintiff and Appellant, v.
RONALD KOENIG, as Chairman, etc., et al.,
Defendants and Respondents.

562

---

---

COUNSEL

Donald Specter and Charles S. Bishop for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, Paul D. Gifford and Maria J. Fonseca, Deputy Attorneys General, for Defendants and Respondents.

## OPINION

**CHANNELL, J.**—In this case of first impression, appellant Prison Law Office challenges the constitutionality of Penal Code section 3003,[1] providing for return of a parolee to the county of his or her commitment when released on parole. The Prison Law Office contends that the trial court improperly granted summary judgment to respondent Ronald Koenig, Chairman of the Board of Prison Terms.[2] We find the provision constitutional on its face and thus affirm the judgment.

### I. FACTS

After the Board of Prison Terms (Board) formulated a policy of releasing parolees to the county of commitment, appellant Prison Law Office brought an action to enjoin implementation of the policy on procedural grounds and to declare it unconstitutional as a matter of substantive law. Subsequently, the Legislature codified this policy in section 3003. (See Stats. 1982, ch. 1407, § 1, pp. 5363-5364.) The new statute, rather than the policy, then became the focus of the litigation.[3]

After surviving a demurrer, the Prison Law Office requested that the Board produce documents and answer interrogatories, seeking certain factual information. The Board objected that the answers and documents sought were irrelevant to the sole issue in the case—the purely legal question of the constitutionality of section 3003. The trial court granted a motion to compel discovery. Before complying with the discovery order, the Board filed a motion for summary judgment; the Prison Law Office countered with a similar motion. After a hearing, the trial court granted the Board's motion, denied that made by the Prison Law Office, and dissolved the earlier order compelling discovery. The trial court later entered judgment on its summary judgment order. The Prison Law Office filed a timely appeal from that

---

[1]All statutory references are to the Penal Code, unless otherwise indicated.

[2]Koenig, present Chairman of the California Board of Prison Terms, has been substituted for Raymond C. Brown and Albert Leddy, former chairmen of the Board.

[3]At this point, the procedural challenge to the Board policy became moot. The parties agree that the sole issue on appeal is the substantive one—the constitutionality of section 3003.

judgment.[4] The sole issue on appeal is whether section 3003,[5] providing for the return of a parolee to the county of commitment, is constitutional.

■ The Prison Law Office contends both that its motion for summary judgment should have been granted and that the Board's motion should have been denied.[6]

## II. TYPE OF CONSTITUTIONAL ATTACK

■ ■ It is unclear from the record on appeal whether the Prison Law Office challenges section 3003 on its face or as applied. The Prison Law Office has consistently phrased its challenge in terms of a constitutional test concerning whether the requirement of a release to the county of commitment (1) bears any relationship to the crime for which the parolee was incarcerated, (2) relates to noncriminal conduct, and (3) requires or forbids conduct not reasonably related to future criminality. (See *People* v. *Dominguez* (1967) 256 Cal.App.2d 623, 627-628 [64 Cal.Rptr. 290]; see also *People* v. *Knox* (1979) 95 Cal.App.3d 420, 427 [157 Cal.Rptr. 238] [*Dominguez* test held applicable to parole condition].) This standard may be appropriate to test

---

[4]Initially, the Prison Law Office appealed from an order denying its motion for summary judgment and granting the Board's motion for summary judgment. However, as an order granting summary judgment is not an appealable order (*Islander Yachts, Inc.* v. *One Freeport 36-Foot Vessel* (1985) 173 Cal.App.3d 1081, 1086, fn. 6 [219 Cal.Rptr. 656]; see 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 76, p. 100) and because no appealable final judgment had issued (see Cal. Rules of Court, rule 2(c)), we dismissed the appeal. Since that time, a judgment was issued. Under rule 2(c) of the California Rules of Court, we treat the notice of appeal, filed before judgment was rendered, as filed immediately after entry of judgment. (*Classen* v. *Weller* (1983) 145 Cal.App.3d 27, 34, fn. 1 [192 Cal.Rptr. 914].) On the parties' joint petition, we vacated our dismissal. We now proceed to determine the merits of this appeal.

[5]Until July 1, 1986, section 3003 provided: "(a) An inmate who is released on parole shall be returned to the county from which he or she was committed. [¶] (b) Notwithstanding subdivision (a), an inmate may be returned to another county in a case where that would be in the best interests of the public and of the parolee. If the authority setting the conditions of parole decides on a return to another county, it shall place its reasons in writing in the parolee's permanent record. In making its decision, the authority may consider, among others, the following factors: [¶] (1) The need to protect the life or safety of a victim, the parolee, a witness or any other person. [¶] (2) Public concern that would reduce the chance that the inmate's parole would be successfully completed. [¶] (3) The verified existence of a work offer, or an educational or vocational training program. [¶] (4) The last legal residence of the inmate having been in another county. [¶] (5) The existence of family in another county with whom the inmate has maintained strong ties and whose support would increase the chance that the inmate's parole would be successfully completed. [¶] (c) An inmate may be paroled to another state pursuant to any other provision of law." (See Stats. 1982, ch. 1407, § 1, pp. 5363-5364.)

On July 1, 1986, an amended version of section 3003 took effect. (See Stats. 1985, ch. 1419, §§ 2, 3.)

[6]The fact that both parties moved for summary judgment, does not conclusively establish the absence of a triable issue of fact; the trial court must independently determine the motions. (*Trailer Train Co.* v. *State Bd. of Equalization* (1986) 180 Cal.App.3d 565, 580, fn. 10 [225 Cal.Rptr. 717].)

a challenge to the application of section 3003 to a particular parolee under a particular set of circumstances, but that is not the situation presented by this appeal. The Prison Law Office brought this action without alleging that the law had, in fact, been improperly applied to any particular parolee, nor does the complaint list any parolee as plaintiff. The complaint lists only two plaintiffs—a taxpayer who is not a party to this appeal and the Prison Law Office. The Prison Law Office amended its pleadings twice, but did not alter the thrust of its constitutional attack or attempt to add other plaintiffs. Therefore, we construe the Prison Law Office challenge as an attack only on the statute's facial constitutionality. On the Prison Law Office's petition for rehearing, we gave this question further consideration, but have come to the same conclusion.

The fact that the Prison Law Office does not have standing to raise a challenge to the application of section 3003 reinforces our conclusion. At trial, the Board demurred to the Prison Law Office's complaint on the ground that it had no standing to sue. The trial court overruled the demurrer and ruled for the Board on the merits. We still assume that the Prison Law Office had standing to make such a facial constitutional challenge. However, the Prison Law Office's request for rehearing—on the ground that it did, in fact, raise a challenge to the application of the statute—raises doubts about its standing to raise this type of challenge. The answers submitted to our request for letter briefs on the standing issue convince us that the Prison Law Office does not have standing to challenge the application of this provision. (See *In re Cregler* (1961) 56 Cal.2d 308, 313 [14 Cal.Rptr. 289, 363 P.2d 305]; *City of Vallejo* v. *Adult Books* (1985) 167 Cal.App.3d 1169, 1175 [213 Cal.Rptr. 143], cert. den. (1986) 475 U.S. 1064 [89 L.Ed.2d 601, 106 S.Ct. 1374].)

### III. CONSTITUTIONALITY

The pleadings and briefs, drafted in terms of the inapplicable *Dominguez* test, do not state explicitly the basis of the constitutional challenge (e.g., federal or state constitution, "equal protection" or "substantive due process," 14th Amend., etc.). Thus, we will interpret the constitutional challenge broadly.  ■  If the challenge is based on substantive due process (U.S. Const., 14th Amend.; Cal. Const., art. I, § 7), the statute must meet the rational basis test—it must not be unreasonable, arbitrary, or capricious, but must have a real and substantial relation to the object sought to be obtained. (*Goggin* v. *State Personnel Bd.* (1984) 156 Cal.App.3d 96, 107 [202 Cal.Rptr. 587]; *Nebbia* v. *New York* (1934) 291 U.S. 502, 525 [78 L.Ed. 940, 949-950, 54 S.Ct. 505, 89 A.L.R. 1469]; see *West Coast Hotel Co.* v. *Parrish* (1937) 300 U.S. 379, 391 [81 L.Ed. 703, 708, 57 S.Ct. 578] [liberty may properly be restrained, consistent with due process, if

restriction protects health, safety, morals, or welfare].) ▪ If we construe this as an equal protection challenge (U.S. Const., 14th Amend.; Cal. Const., art. I, § 7), the rational basis test requires that distinctions drawn by a challenged statute must bear some rational relationship to a conceivable state purpose. (*Goggin* v. *State Personnel Bd., supra,* 156 Cal.App.3d at p. 107.) ▪ The goal of equal distribution of parolees throughout the state is a legitimate, reasonable state goal. The conclusion that the Legislature appears to have drawn—that to release parolees to the county of commitment will spread the parolee population throughout the state—is also reasonable. Under either substantive due process or equal protection analysis, section 3003 is constitutional. (*Ibid.*)

Section 3003 does not mandate return of a parolee to the commitment county in every case. The Legislature recognizes that the best interests of the public and the parolee may mandate release to another county—even to another state. (See § 3003, subds. (b), (c).) A noninclusive list of factors—including the parolee's last legal residence, the county where the parolee has a verifiable work offer, and the county where the parolee's family resides—may be considered when the Board decides where the parolee should be released. (§ 3003, subds. (b)(3)-(5).) The Board's opportunity to consider these factors also supports the conclusion that section 3003 is a reasonable means to achieve the legitimate governmental ends of effective parole supervision and successful reintegration of parolees into society. Section 3003 is constitutional on its face.

Next, the Prison Law Office contends that we must subject section 3003 to "special scrutiny" because the statute burdens a parolee's fundamental rights, such as the right to intrastate travel, free speech, and free association. The cited California cases all refer to the rights of probationers, not the rights of parolees. Probation and parole are quite different concepts. ▪ "Probation involves *judicial* action taken before the prison door is closed, whereas parole involves *executive* action taken after the door has been closed on a convict." (*People* v. *Borja* (1980) 110 Cal.App.3d 378, 381 [167 Cal.Rptr. 813], italics in original.) Parole is the conditional release of a prisoner who has already served part of his or her state prison sentence. Once released from confinement, a prisoner on parole is not free from legal restraint, but is constructively a prisoner in the legal custody of state prison authorities until officially discharged from parole. (*Id.,* at p. 382; see § 3056.) Clearly, the liberty of a parolee is "partial and restricted," (*People* v. *Denne* (1956) 141 Cal.App.2d 499, 508 [297 P.2d 451]; see *People* v. *Anglin* (1971) 18 Cal.App.3d 92, 95 [95 Cal.Rptr. 588]), not the equivalent of that of an average citizen (see *Morrissey* v. *Brewer* (1972) 408 U.S. 471, 482 [33 L.Ed.2d 484, 495, 92 S.Ct. 2593]), as the Prison Law Office seems to contend. Although a parolee is entitled to basic rights entitling him or

her to constitutional protection against arbitrary or oppressive official action, a parolee's rights are not necessarily tested by the same rules that apply to citizens who are possessed of full civil rights. (*People* v. *Howard* (1978) 79 Cal.App.3d 46, 49 [143 Cal.Rptr. 342].) Insofar as is necessary for the maintenance of parole guardianship, the status of a parolee is no different than that of a prisoner. (*Ibid.*; *People* v. *Anglin, supra,* 18 Cal.App.3d at p. 95.)

By allowing a parolee to serve the remainder of his or her sentence outside prison walls, the state does not relinquish its right to regulate the parolee's basic conduct during the remainder of the term of parole. By definition, a prisoner is one who must live within prison walls—one whose rights are severely restricted. (See § 2601.) Courts have traditionally recognized a state's right to require a parolee to live in a particular place. (See *Morrissey* v. *Brewer, supra,* 408 U.S. at p. 477 [33 L.Ed.2d at p. 492]; *In re Schoengarth* (1967) 66 Cal.2d 295, 300 [57 Cal.Rptr. 600, 425 P.2d 200]; *In re Faucette* (1967) 253 Cal.App.2d 338, 341 [61 Cal.Rptr. 97] [parolee has no right to choose residence].) If the state may constitutionally restrict a prisoner's liberty by incarcerating him, and may require a parolee to live in a particular place during the parole period, then a statute specifying in which county a parolee will probably spend his or her term of parole also passes constitutional muster.

■ The Prison Law Office also suggests that the statute is overbroad. It poses a hypothetical situation in which the statute can be applied in violation of a parolee's constitutional rights, arguing that the statute must therefore be invalid. However, when a statute is attacked as unconstitutional on its face, the attacker cannot prevail by suggesting that, in some future hypothetical situation, constitutional problems may arise as to a particular application of the statute. Instead, the challenger must demonstrate that the act's provisions inevitably pose a present total and fatal conflict with applicable prohibitions. (*Pacific Legal Foundation* v. *Brown* (1981) 29 Cal.3d 168, 180-181 [172 Cal.Rptr. 487, 624 P.2d 1215]; *People* v. *Harris* (1985) 165 Cal.App.3d 1246, 1255 [212 Cal.Rptr. 216].) The Prison Law Office has not done so.

■ As a procedural matter, a motion for summary judgment must be granted if there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); see *Coast-United Advertising, Inc.* v. *City of Long Beach* (1975) 51 Cal.App.3d 766, 769 [124 Cal.Rptr. 487]; see also *Grant* v. *Avis Rent a Car System, Inc.* (1984) 158 Cal.App.3d 813, 816 [204 Cal.Rptr. 869].) Section 3003 is constitutional on its face; therefore, the trial court properly denied the Prison Law Office's motion for summary judgment.

Finally, the Prison Law Office contends that, in order to determine the constitutionality of section 3003, certain factual questions must first be answered. It argues the trial court therefore erred when granting the Board's motion for summary judgment. However, this argument rests on its earlier assertion that the three-pronged, fact-specific *Dominguez* test applies. Having rejected this contention, we further reject the contention that the Prison Law Office must be allowed to complete discovery before the trial court could properly rule on the Board's motion for summary judgment, which presented only a question of law.

The judgment is affirmed.

Anderson, P. J., concurred.

**POCHÉ, J.**—I concur in the result. I agree with the basic premise of my colleagues: the instant facial attack is not the proper method to raise constitutional challenges to Penal Code section 3003.[1] For all we know, 99.9 percent of prison inmates in this state are tried, convicted and committed from the county of their residence and hence under section 3003 are paroled back home, and the .1 percent of the inmates who commit crimes outside of their county residence are deemed by the Department of Corrections to fall outside of the presumption of section 3003 and are also paroled to their home county. Since such home town delivery would not support any constitutional objection to section 3003 that I am aware of, the statute must prevail over the general objection of the Prison Law Office. (Cf. *People* v. *Harris* (1985) 165 Cal.App.3d 1246, 1255-1256 [212 Cal.Rptr. 216] [and cases cited therein].)

I express no other opinion as to the constitutionality of the statute.

Appellant's petition for review by the Supreme Court was denied December 31, 1986.

---

[1]All statutory references are to the Penal Code.