[No. A083095. First Dist., Div. Four. Aug. 25, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
PERRO PETER LEWIS, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II, III, IV and V.

**COUNSEL**

Mark Shenfield, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Ann Jensen, Joan Killeen and George F. Hindall III, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**POCHÉ, J.**—A jury found defendant Perro Peter Lewis guilty of kidnapping for robbery (Pen. Code, § 209, subd. (b)(1)), five counts of robbery (Pen. Code, § 211), and five counts of vehicle theft (Veh. Code, § 10851); the jury also found true half a dozen weapon use enhancement allegations (Pen. Code, § 12022). After defendant admitted two prior serious felony convictions, the trial court sentenced him to state prison for an indeterminate sentence of life and a consecutive determinate sentence of fourteen years.

This is defendant's second appeal. His first resulted in an unusual reversal. We concluded that a lost transcript of some of the proceedings conducted on a suppression motion required other contentions in effect to be held in abeyance until this problem was resolved. We therefore remanded the cause to the trial court in order to provide it an opportunity to make good that omission. (*People* v. *Lewis* (June 17, 1997) A073849 [nonpub. opn.].) Pursuant to our remittitur, the trial court in essence conducted a rerun of testimony covered by the missing transcript. It then again denied defendant's suppression motion and reinstated the judgment. Defendant filed a timely notice of appeal.

We first conclude that the suppression motion was correctly denied. In so concluding we join with other jurisdictions that have held that a police officer need not obtain an arrest warrant before entering a parolee's house for the purpose of taking the parolee into custody. We then consider and find without merit the contentions made by defendant on his initial appeal but not addressed by us at that time. In light of these conclusions, we affirm the judgment of conviction.

REVIEW

I

 The basic issue of the suppression motion, insofar as it was impacted by the missing transcript, was whether defendant's warrantless arrest

in his home by Oakland Police Officer Grubensky violated *People* v. *Ramey* (1976) 16 Cal.3d 263 [127 Cal.Rptr. 629, 545 P.2d 1333], which generally forbids warrantless home arrests. We noted that the only evidence we had on this issue in the remaining transcript came from defendant himself and strongly supported his *Ramey* claim. Unwilling to order a complete retrial, we opted for the "less drastic measure" of giving the trial court and the parties the opportunity in effect to recreate the missing transcript by reconvening that part of the suppression hearing reported in the missing transcript. This is pretty much what occurred. The same two witnesses who had testified on the missing day of the first suppression hearing testified again following our remand. It also appears that the prosecution made new arguments that had not been raised at the first hearing. Wholly apart from the *Ramey* issue, the prosecutor also argued that defendant's arrest was supported by probable cause.

The essential facts are not in dispute. On September 30, 1991, Oakland police were looking for defendant. They were looking very hard because there had been a rash of robberies in the vicinity of the address defendant had given as his residence to his parole agent. A number of victims had already identified defendant as the robber. In the late afternoon of the 30th, there was another robbery. Officer Grubensky, who earlier that day had told a superior that he was looking for defendant, was the first officer to speak with the victim. After getting a description, he went immediately to defendant's address. Grubensky knocked at the door, which was answered by defendant's mother. She asked who was there, and Grubensky answered "Oakland Police." Defendant's mother opened the door, at which defendant asked who it was. She told him "The police." Grubensky entered the house and arrested defendant. After several minutes the latest victim was brought to the scene, where she identified defendant (who was in the back of Grubensky's vehicle) as the man who had just robbed her. Defendant's parole officer had unsuccessfully tried to arrest defendant at his home earlier that month. Grubensky's superior officer, Sergeant Delgadillo, was not positive he had informed Grubensky of defendant's status as a parolee, but it would have been Delgadillo's practice to have done so.

Defendant's position at the hearing conducted pursuant to our remand was quite precise; although conceding that Officer Grubensky had probable cause to arrest him and that his parole search condition[1] would have authorized Grubensky's entry for purposes of a search, defendant argued that the search

---

[1] We assume the search condition was as prescribed by California Code of Regulations, title 15, section 2511: "You and your residence and any property under your control may be searched without a warrant at any time by any agent of the Department of Corrections or any law enforcement officer." (See also *id.*, § 3901.9.2.)

condition could not serve as authority for the warrantless entry to effect an arrest, and no exigent circumstance existed to justify Grubensky's entry. The trial court ruled as follows: "It's my conclusion that Officer Grubensky's entry into the house was justified by the parole search clause. [¶] The arrest inside the house was based on probable cause and did not violate *Ramey*. [¶] In view of that conclusion, we really don't need to examine whether there were exigent circumstances which also may have justified the entry."

Defendant renews this argument. As will be shown, it is riddled with factual and legal weaknesses. To be fair, a large measure of the legal deficiencies reflect a sea change in the governing law since defendant first made his suppression motion in 1992. Moreover, that change is continuing, and has largely overtaken defendant's approach to the topic.

(2) The change began after defendant was arrested and while he was being tried. In *In re Tyrell J.* (1994) 8 Cal.4th 68 [32 Cal.Rptr.2d 33, 876 P.2d 519], our Supreme Court held that a juvenile *probationer* subject to a search condition of probation could be searched by an officer who was unaware of the condition at the time of the search. Drawing extensively upon federal precedent, the court noted the principle that "the government may dispense with the warrant requirement in situations when ' "special needs, beyond the normal need for law enforcement, make the warrant and prob-able-cause requirement impracticable" ' " and how the operation of a proba-tion system presented special needs of speed, deterrence, and deference to a separate administrative system. (*Id.* at pp. 77-78, quoting *Griffin* v. *Wiscon-sin* (1987) 483 U.S. 868, 873 [107 S.Ct. 3164, 3168, 97 L.Ed.2d 709].) Following the approach of this court in *In re Marcellus L.* (1991) 229 Cal.App.3d 134 [279 Cal.Rptr. 901], the court concluded that ". . . a juvenile probationer subject to a valid search condition does not have a *reasonable* expectation of privacy over his or her person or property" unless the search is arbitrary, capricious, or intended to harass. (*In re Tyrell J., supra,* at pp. 83-84, 86-89, original italics.)

█ The fundamental shift occurred in 1998, after the trial court had complied with our remand and while defendant's current appeal was pending in this court. In *People* v. *Reyes* (1998) 19 Cal.4th 743 [80 Cal.Rptr.2d 734, 968 P.2d 445], the court overruled a previous decision, *People* v. *Burgener* (1986) 41 Cal.3d 505 [224 Cal.Rptr. 112, 714 P.2d 1251], and held that an adult *parolee* subject to a search condition could be searched even if the searching officers did not have a reasonable suspicion that the parolee had violated or was planning to violate either the law or the conditions of parole. Subject to the same proviso from *Tyrell J.* about arbitrary, capricious, or harassing searches, "[w]here the search is for a proper purpose, we hold that,

even in the absence of particularized suspicion, a search conducted under the auspices of a properly imposed parole search condition does not intrude on any expectation of privacy 'society is "prepared to recognize as legitimate." ' [Citations.]" (*People* v. *Reyes, supra,* at pp. 753-754.) Moreover, in the course of holding that its decision was fully retroactive, the court noted that "even if suspicionless searches . . . remain illegal in the abstract, the evidence they produce need not be excluded from subsequent criminal proceedings." (*Id.* at p. 755.)

 Almost 30 years ago, in *In re Martinez* (1970) 1 Cal.3d 641, 646 [83 Cal.Rptr. 382, 463 P.2d 734], our Supreme Court held that search of a parolee could not be upheld if the searching officers are unaware that the person is subject to a search condition. Citing this authority, and believing that there is no basis for concluding Grubensky was aware of his parolee status, defendant argues that the officer's entry cannot be justified by the existence of his search condition. The factual premise for this argument is faulty. Sergeant Delgadillo's testimony about his usual practice of discussing a suspect's record and (if appropriate) parole status supports an inference that he did in fact communicate information to this effect about defendant to Grubensky prior to the latter's entry. The trial court, sitting as the trier of fact on defendant's suppression motion, was entitled to draw that inference, which will support an implied finding that Grubensky knew defendant was a parolee. That finding must be upheld here. (E.g., *People* v. *Laiwa* (1983) 34 Cal.3d 711, 718 [195 Cal.Rptr. 503, 669 P.2d 1278].)[2]

Even without such a finding, defendant's argument would fail because its legal premise has been undermined. The *Martinez* holding cited above can no longer be regarded as controlling. The *Tyrell J.* court noted that ". . . at the time that decision was rendered, there existed no automatic search condition imposed on parolees . . . ." (*In re Tyrell J., supra,* 8 Cal.4th 68, 88.) Such conditions are now automatic, and imposed on every parolee. (See Cal. Code Regs., tit. 15, §§ 2511, 3901.9.2; *People* v. *Reyes, supra,* 19 Cal.4th 743, 763 (conc. and dis. opn. of Kennard, J.).) *Tyrell J.* approved a probationer's search even where the searching officer was unaware of a

---

[2]The same reasoning will defeat defendant's claim that Grubensky could not have known that defendant, as opposed to defendant's mother, was residing in the house. Defendant's parole officer testified that he provided Delgadillo with the address that defendant had provided as his residence, the same address at which the parole officer had seen defendant in the past. Delgadillo confirmed this testimony. This evidence, together with Delgadillo's testimony about his usual practice of passing on information, will support an implied finding that Officer Grubensky could reasonably have believed the address given was defendant's residence. We also note that Grubensky's power to enter would not be impaired even if defendant's mother was also residing in the house at the same time as defendant. (See *People* v. *Burgener, supra,* 41 Cal.3d 505, 533 and decisions cited.)

search condition, and there is no reason to believe the same result would not be extended to parolees. Indeed, the Supreme Court has subsequently noted that "*Tyrell J.*'s reasoning applies with equal force to adults. In both cases the expectation of privacy is already reduced by the absence of the warrant requirement. As a convicted felon still subject to the Department of Corrections, a parolee has conditional freedom—granted for the specific purpose of monitoring his transition from inmate to free citizen. The state has a duty not only to assess the efficacy of its rehabilitative efforts but to protect the public, and the importance of the latter interest justifies the imposition of a warrantless search condition. [¶] . . . [¶] The level of intrusion is de minimis and the expectation of privacy greatly reduced when the subject of the search is on notice that his activities are being routinely and closely monitored. Moreover, the purpose of the search condition is to deter the commission of crimes and to protect the public, and the effectiveness of the deterrent is enhanced by the potential for random searches." (*People* v. *Reyes*, *supra*, 19 Cal.4th 743, 752-753.)

Although *Tyrell J.* and *Reyes* dealt with warrantless searches, we believe their logic will extend to warrantless arrests. ■ The privacy interests concerning searches and arrests stand on an equal constitutional footing. (E.g., *Payton* v. *New York* (1980) 445 U.S. 573, 589-590 [100 S.Ct. 1371, 1382, 63 L.Ed.2d 639].) ■ By parity of reasoning, a parolee's protection against warrantless arrests should not be greater than the protection against warrantless searches.

As should be evident from *Tyrell J.* and *Reyes*, a person's status as probationer or parolee can be decisive in determining the extent of Fourth Amendment protection the person can claim. What the New York Court of Appeals stated more than two decades ago remains equally true today: "[I]n any evaluation of the reasonableness of a particular search or seizure the fact of defendant's status as a parolee is always relevant and may be critical; what may be unreasonable with respect to an individual who is not on parole may be reasonable with respect to one who is . . . ." (*People* v. *Huntley* (1977) 43 N.Y.2d 175 [401 N.Y.S.2d 31, 371 N.E.2d 794, 797]; see also *Vernonia School Dist. 47J* v. *Acton* (1995) 515 U.S. 646, 653-654 [115 S.Ct. 2386, 2391, 132 L.Ed.2d 564].)

■ In California, parolee status carries distinct disadvantages when compared to the situation of the law-abiding citizen. Even when released from actual confinement, a parolee is still constructively a prisoner subject to correctional authorities. (E.g., *In re Marzec* (1945) 25 Cal.2d 794, 797 [154 P.2d 873]; *In re Taylor* (1932) 216 Cal. 113, 115 [13 P.2d 906]; *Matter of Application of Stanton* (1915) 169 Cal. 607, 610 [147 P. 264]; *Prison Law*

*Office* v. *Koenig* (1986) 186 Cal.App.3d 560, 566-567 [233 Cal.Rptr. 590]; cf. *People* v. *Reyes, supra,* 19 Cal.4th 743, 752 [characterizing parolee as "a convicted felon still subject to the Department of Corrections"].) The United States Supreme Court has characterized parole as "an established variation on imprisonment" and a parolee as possessing "not . . . the absolute liberty to which every citizen is entitled, but only . . . the conditional liberty properly dependent on observance of special parole restrictions." (*Morrissey* v. *Brewer* (1972) 408 U.S. 471, 477, 480 [92 S.Ct. 2593, 2598, 2600, 33 L.Ed.2d 484]; accord, *Griffin* v. *Wisconsin, supra,* 483 U.S. 868, 873-875 [107 S.Ct. 3164, 3168-3169].) Our own Supreme Court holds a like opinion: "Although a parolee is no longer confined in prison his custody status is one which requires . . . restrictions which may not be imposed on members of the public generally." (*People* v. *Burgener, supra,* 41 Cal.3d 505, 531; see *People* v. *Reyes, supra,* at p. 753 ["parolees . . . are subject to limitations not applicable to ordinary citizens"].)

Thus it has been held that by virtue of the parolee's status as one who remains *in custodia legis* of correctional authorities, "standard concepts of arrest and probable cause have little relevance," and a parolee's "apprehension, although outwardly resembling arrest," is simply a return from constructive to actual custody, regardless of whether the apprehension is effected by police or parole officers. (*People* v. *Giles* (1965) 233 Cal.App.2d 643, 647 [43 Cal.Rptr. 758]; *People* v. *Hernandez* (1964) 229 Cal.App.2d 143, 148 [40 Cal.Rptr. 100]; *People* v. *Denne* (1956) 141 Cal.App.2d 499, 507-510 [297 P.2d 451]; cf. Pen. Code, § 3056 ["Prisoners on parole shall remain under the legal custody of the department [of corrections] and shall be subject at any time to be taken back within the . . . prison"]; *United States* v. *Polito* (2d Cir. 1978) 583 F.2d 48, 55.)

■ The touchstone for all Fourth Amendment analysis is the reasonableness of governmental action; reasonableness is measured by balancing the intrusion suffered by the individual against the governmental interests promoted. (E.g., *Vernonia School Dist. 47J* v. *Acton, supra,* 515 U.S. 646, 652-653 [115 S.Ct. 2386, 2390]; *Skinner* v. *Railway Labor Executives' Assn.* (1989) 489 U.S. 602, 619 [109 S.Ct. 1402, 1414, 103 L.Ed.2d 639]and decisions cited.) Most of that analysis has already been performed in *Reyes,* so it need not be reproduced here except in highlight form.

■ *Reyes* decided that a parolee has a greatly reduced expectation of privacy by virtue of a search condition imposed at the time of release from state prison. The parolee who could not stop entry into the home for a search can have no greater power to prevent an entry for an arrest. The intrusion for the latter purpose is virtually the same as for the former. In light of *Griffin,*

*Tyrell J.*, and *Reyes*, the privacy interest affected must be regarded as extremely modest, drawing the line only at intrusions that qualify as arbitrary, capricious, or intended only to harass. If the state has compelling interests justifying random, suspicionless entries to search, a particularized and supported by probable cause entry to arrest cannot be deemed less reasonable. Entry for either purpose entails a level of intrusion that is de minimis and is the direct result of the parolee's continued misconduct. (*People* v. *Reyes*, *supra*, 19 Cal.4th 743, 752-753.) If, according to *Reyes*, warrantless searches serve a compelling state interest in protecting public safety and ensuring that a parolee is sticking to the straight and narrow life of noncriminality, those same interests are obviously even more weighty when there is a concrete basis for deciding that the parolee has returned to crime. (See *Morrissey* v. *Brewer*, *supra*, 408 U.S. 471, 483 [92 S.Ct 2593, 2601] [state has "overwhelming interest" in expeditious retaking of crime-committing parolees for return to prison].) The arresting officer is if anything even more focused on the state's interests in protecting the public and monitoring the parolee.

Officer Grubensky's entry clearly was not arbitrary, capricious, or undertaken for the purpose of harassing defendant. His purpose was entirely legitimate—to make an arrest based on what defendant has never disputed was ample probable cause. The fact that defendant's probation officer had already tried to arrest him only underscores this conclusion.

██ It is a general principle of both state and federal constitutional law that absent consent or exigent circumstances police cannot enter a home to make a warrantless arrest. (*Payton* v. *New York*, *supra*, 445 U.S. 573, 576 [100 S.Ct 1371, 1374-1375; *People* v. *Ramey*, *supra*, 16 Cal.3d 263, 275-276.) The purpose of the principle is to protect the place, not the person. (See *Minnesota* v. *Olson* (1990) 495 U.S. 91, 95 [110 S.Ct. 1684, 1687, 109 L.Ed.2d 85]; *New York* v. *Harris* (1990) 495 U.S. 14, 17 [110 S.Ct. 1640, 1642, 109 L.Ed.2d 13].) ██ Defendant erroneously assumes it applies to him. Courts across the country, however, have concluded that a parolee who has no legitimate expectation of privacy against warrantless searches is similarly divested of protection against warrantless arrests, even in the home. (*U.S.* v. *Cardona* (1st Cir. 1990) 903 F.2d 60; *Smith* v. *State* (1981) 1 Ark.App. 241 [614 S.W.2d 527]; *State* v. *Bass* (La.Ct.App. 1992) 595 So.2d 820; *People* v. *Dyla* (1988) 142 A.D.2d 423 [536 N.Y.S.2d 799]; *State* v. *Thompson* (1987) 33 Ohio St.3d 1 [514 N.E.2d 407]; *State* v. *Maestas* (Utah.Ct.App. 1991) 815 P.2d 1319; *State* v. *Pittman* (1990) 159 Wis.2d 764 [465 N.W.2d 245].) For the reasons stated above, we believe the conclusion reached by these courts is sound.

Defendant's situation will demonstrate the unworkable illogic behind a contrary conclusion. The idea that Officer Grubensky could enter to conduct

a warrantless search but not to make a warrantless arrest seems, at best, anomalous. (See *People* v. *Dyla, supra,* 536 N.Y.S.2d 799, 810.) The idea becomes still harder to accept when it is remembered that Grubensky could have searched even without a reasonable suspicion of criminality, but here he was armed with the probable cause needed to arrest any citizen. The ability and authority to enter for purposes of searching appear to mean that the interest behind the *Payton-Ramey* rule in preserving the sanctity of the home has already been compromised. Thus, a number of California decisions recognize that once officers make a valid entry to search, there can be no *Ramey* objection to a subsequent arrest. (See *People* v. *Palmquist* (1981) 123 Cal.App.3d 1, 15 [176 Cal.Rptr. 173] ["Since the officers had authorization to enter the home to search, the arrest inside was of no constitutional significance"]; *People* v. *McCarter* (1981) 117 Cal.App.3d 894, 907-908 [173 Cal.Rptr. 188] [same]; *People* v. *Evans* (1980) 108 Cal.App.3d 193, 196 [166 Cal.Rptr. 315] ["We find no violation of *Ramey* principles in the facts here, for it is the intrusion into, rather than the arrest in, the dwelling which offends . . . *Ramey*"].) The logic of defendant's argument is that, with no expectation of privacy against searches, he can nevertheless keep at bay officers who wish to arrest him. Defendant can point to no reason for making the officers apply for an arrest warrant when, by virtue of the parolee's search condition, they already have the virtually conclusive authority to enter. An arrest warrant would give officers the limited power to enter for that purpose (see *Payton* v. *New York, supra,* 445 U.S. 573, 602-603 [100 S.Ct 1371, 1388]), but the officers would already possess the much broader entry power given them by the search condition. What privacy interests against warrantless arrest are so much weightier than the privacy interests against warrantless search that they can be protected only by making police apply for an arrest warrant? Such a requirement, if adopted, would create a bizarre privacy interest unique to parolees, whose only likely outcome would be the frustration of compelling state interests. Yet that appears to be the direction of defendant's argument, that a rule regulating arrest of citizens must also apply to parolees, even though apprehending a parolee is not an arrest in the same sense, but merely a change in the parolee's custodial status. (See *People* v. *Giles, supra,* 233 Cal.App.2d 643, 647; *People* v. *Denne, supra,* 141 Cal.App.2d 499, 510.)

Finally, requiring a judicial arrest warrant would also conflict with the special needs of the parole system. Parole authorities have the authority to issue arrest warrants. (Cal. Code Regs., tit. 15, §§ 2710-2712.) Requiring police to get a warrant, or requiring parole officers to get a second warrant, could pose significant risks to public safety, as well as the disruption of an established administrative system for parolee supervision. It is therefore impracticable for the circumstances in which such a rule would operate. (See

*Griffin* v. *Wisconsin, supra,* 483 U.S. 868, 876-879 [107 S.Ct. 3164, 3170-3171].) It is also incompatible with the long-standing judicial recognition that "administration of the parole system must be realistic, and not strangled in technical niceties." (*People* v. *Denne, supra,* 141 Cal.App.2d 499, 510; accord, *People* v. *Giles, supra,* 233 Cal.App.2d 643, 647.)

In short, there is no violation of either *Ramey* or *Payton* if officers entitled to enter a home to search enter to make an arrest. (E.g., *People* v. *Palmquist, supra,* 123 Cal.App.3d 1, 15 and decisions cited.) Defendant's argument to the contrary is not only logically unsound and unrealistic, it is ultimately pointless. As previously mentioned, the *Reyes* court noted that police practices that are "illegal in the abstract" do not necessarily require exclusion of evidence. (*People* v. *Reyes, supra,* 19 Cal.4th 743, 755.) Even if Grubensky's warrantless entry did amount to a violation of *Payton,* the conceded fact that he had probable cause to arrest defendant means that there is no constitutional taint to defendant's apprehension or to the victim's subsequent identification of defendant at the scene. (See *New York* v. *Harris, supra,* 495 U.S. 14, 17-20 [110 S.Ct. 1640, 1642-1644] ["following a *Payton* violation, the principle incentive to obey *Payton* still obtains: the police know that a warrantless entry will lead to the suppression of any evidence found, or statements taken, *inside the home.*" (Italics added.)]; *United States* v. *Crews* (1980) 445 U.S. 463, 471, 474 [100 S.Ct. 1244, 1250, 1251, 63 L.Ed.2d 537]; *People* v. *Marquez* (1992) 1 Cal.4th 553, 566-569 [3 Cal.Rptr.2d 710, 822 P.2d 418].)

Defendant also contends Grubensky's entry was invalid because it did not satisfy the knock-notice requirements of Penal Code section 844 (erroneously cited as section 1531 governing *search* warrants). We agree with the Attorney General that this argument need not be addressed because it was not raised at either series of hearings conducted in the trial court. (See *People* v. *Williams* (1999) 20 Cal.4th 119, 130 [83 Cal.Rptr.2d 275, 973 P.2d 52].)

Defendant's other contentions deal with issues from his trial, issues that were not addressed given the limited scope of the initial appeal's resolution. It is to these deferred claims that we now turn.

II-V*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante,* page 662.

## DISPOSITION

The judgment of conviction is affirmed.

Hanlon, P. J., and Reardon, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 1, 1999. Kennard, J., was of the opinion that the petition should be granted.